Amarilis **PARRILLA–BURGOS**, et al., Plaintiffs—Appellants,

v.

Felix **HERNANDEZ–RIVERA**, et al., Defendants—Appellees.

No. 96–1136.

United States Court of Appeals, First Circuit.

Heard Nov. 6, 1996.

Decided March 19, 1997.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and DiCLERICO, Jr.,* District Judge.

DiCLERICO, District Judge.

The plaintiffs, relatives of the decedent, Lionel Galletti Roque ("Galletti"), brought this action under 42 U.S.C. § 1983 against the defendants, members of the Puerto Rico Police Department, seeking damages allegedly suffered when one of the defendants, Félix Hernández Rivera ("Hernández"), shot and killed Galletti during a fight at a bar. The district court granted summary judgment in favor of the defendants, finding that Hernández, who was on medical leave at the time of the shooting, was not acting under color of state law. The district court initially denied the defendants' motion for summary judgment, but reconsidered that ruling in light of our decision in *Martínez v. Colón,* 54 F.3d 980 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995). In this appeal, the plaintiffs challenge the district court's grant of summary judgment. For the reasons expressed below, we affirm the district court's decision.

### *Factual and Procedural Background* [1]

Joan S. Peters, San Juan, PR, with whom Andrés Guillemard–Noble and Nachman, Santiago & Guillemard, were on brief, for appellants.

John F. Nevares, San Juan, PR, with whom Lizzie M. Portela, Guaynabo, PR, and Smith & Nevares, Santurce, PR, were on brief, for appellee Carlos J. López–Feliciano.

Roxanna Badillo–Rodríguez, Assistant Solicitor General, San Juan, PR, with whom Carlos Lugo–Fiol, Solicitor General, and Edda Serrano–Blasini, Deputy Solicitor General, were on brief, for appellees Fernando Vázquez–Gely, Felipe Aponte–Ortiz, Angel L. Díaz, Angel L. Hernández–Colón and Luis E. López–Lebrón.

On January 2, 1989, at around 10:00 p.m., plaintiffs' decedent, Galletti, was drinking at a bar in Trujillo Alto, Puerto Rico, known as Carlos' Place. Galletti was accompanied by Angel Ramírez Fonseca, Ilarión Rosado, and two individuals identified only as Algarín and Ity. At that time, codefendant Hernández, an officer of the Puerto Rico Police Department, arrived with an unidentified group of his friends. Hernández, who was on medical leave due to gastroenteritis, was not in uniform but was carrying his police identification and service revolver. Police department policy states that Puerto Rico police officers are on duty twenty-four hours a day and therefore each officer is required to carry identification and a service revolver at all times.

---

* Of the District of New Hampshire, sitting by designation.

1. In reviewing the decision on the defendants' motion for summary judgment, we recount and consider only those facts that have been alleged by the plaintiff or are not in dispute.

Inside Carlos' Place, Hernández approached Galletti's group and words and threatening glances were exchanged. Galletti challenged Hernández' hostile attitude, stating that he had done nothing to provoke it. Hernández responded, "I'll look at you whichever way I please, because I'm a cop."

The situation escalated. Hernández slapped Galletti's friend Ity. Galletti told Hernández, "Well, you don't have to give me dirty looks. You look at me really bad and I have done nothing to you." Hernández replied, "I look at anybody I want, because I'm a cop. Anybody I decide I want to look at dirty, I look at them dirty." At this point the owner of the bar, apparently concerned by the interchange, told Hernández, "Just because you are the law, you don't need to intimidate people," and asked him to leave. Hernández told the bar owner not to meddle and to leave the combatants alone because it was none of his business.

By this time the conflict had attracted the attention of patrons outside the bar, who entered the bar to better view the confrontation. According to the plaintiffs, Hernández identified himself to the crowd as a police officer, saying that he "was supposed to be there to establish the peace and order" and showed them his police identification, apparently to prevent them from interfering in the conflict. This stopped the fracas for about five minutes.

However, as Hernández was leaving the bar, one of his friends and one of Galletti's friends resumed hostilities. At this point, Galletti told Hernández, "Well, you leave the gun, and me and you will have it out, outside." Hernández responded, "I don't need a gun to fight you. Come on, step outside." Hernández, despite his statement to the contrary, took his service revolver with him as both parties went outside. While Galletti took off his sweater, Hernández threw a beer can at him. Galletti responded by pushing Hernández. Hernández then took out his

service revolver and fired six shots at Galletti. The first shot missed Galletti and hit a bystander but the next five hit Galletti, killing him.

On December 27, 1989, Galletti's survivors brought this § 1983 action against Hernández [2] and other supervising officers (the "supervisory defendants").[3] On August 30, 1991, supervisory defendant Carlos López Feliciano filed a motion for summary judgment, which the other supervisory defendants joined, on the ground that Hernández was not acting under color of state law when he shot Galletti.

On November 1, 1991, Judge Carmen Consuelo Cerezo denied the motion for summary judgment. On March 31, 1992, supervisory defendant López Feliciano filed a motion for reconsideration of that decision. At this time, the other supervisory defendants filed a motion to dismiss, asserting that the plaintiffs had not alleged facts necessary to establish supervisory liability. Judge Raymond L. Acosta referred these motions to Magistrate Judge Jesús Antonio Castellanos for a report and recommendation.

On April 29, 1994, Magistrate Castellanos recommended that: (1) the motion for reconsideration filed by supervisory defendant López Feliciano be denied; (2) the motion to dismiss filed by supervisory defendants Luis López Lebrón, Angel Hernández, Angel Díaz, Fernando Vázquez–Gely, and Félix Aponte–Ortiz be denied; and (3) the motion to dismiss filed by supervisory defendants Luis Carrillo and José Lucena be granted. On March 16, 1995, Judge Salvador E. Casellas issued an order adopting the magistrate's report and recommendation.[4] On May 31, 1995, we issued our decision in *Martínez v. Colón*, 54 F.3d 980 (1st Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995). On June 6, 1995, supervisory defendant López Feliciano filed a motion, joined in by the remaining supervisory

---

**2.** Hernández never answered the complaint, and the district court entered a default against him on August 31, 1990. He played no further role in the case or the subsequent appeal.

**3.** The other officers named as defendants are: Carlos López Feliciano, Luis López Lebrón, An-

gel Hernández, Luis Carrillo, Angel Díaz, Fernando Vázquez–Gely, Félix Aponte–Ortiz, and José Lucena.

**4.** This order ended the involvement of supervisory defendants Carrillo and Lucena in the action.

defendants, requesting the district court to reconsider its decision on the summary judgment motion in light of *Martínez*. On November 29, 1995, Judge Casellas vacated the court's order of November 1, 1991, and dismissed the case on the ground that defendant Hernández was not acting "under color of law" for the purposes of § 1983 when he killed Galletti. The plaintiffs appealed this decision.

### Discussion

The plaintiffs assert that the district court erred in determining as a matter of law that Hernández' acts were not taken under color of state law.[5] Specifically, they challenge the district court's application of *Martínez* to this case.[6]

### 1. Summary Judgment Standard

A district court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In this case,

> summary judgment will lie if the record, even when taken in the aspect most favorable to the nonmovant fails to yield a trial-worthy issue as to some material fact. In applying this principle, it is important to

bear in mind that not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared.

*Martínez*, 54 F.3d at 983–84 (citation omitted). For the purposes of this appeal, we exercise *de novo* review and adopt the plaintiffs' version of all controverted facts. *See id.*

### 2. Applying *Martínez*

The plaintiffs assert that the district court improperly applied *Martínez* to this case. In *Martínez*, an on-shift[7] police officer accidentally shot and maimed a fellow off-shift officer while harassing that officer in the station house. *See* 54 F.3d at 982, 987. The harassing officer never expressly asserted his authority as a police officer, but he was in uniform and armed with his service revolver. *See id.* at 987. The defendants were other police officers, at least one of whom was a supervisor, who observed the incident but did not intervene. *See id.* at 983. We reviewed the district court's award of summary judgment in favor of the defendants and held that, under the totality of the circumstances, it was clear that the officer was not acting under color of state law because he was engaged in the personal pursuit of private

---

5. Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (West 1994). We discuss this issue in terms of "color of state law" despite the fact that Puerto Rico is not a state because "Puerto Rico enjoys the functional equivalent of statehood in regard to section 1983 and, thus, state law includes Puerto Rico law." *Martínez*, 54 F.3d at 984.

6. The plaintiffs also contend that in granting summary judgment for the defendants Judge Casellas abused his discretion by vacating both the

prior order of Judge Cerezo denying summary judgment and his own order adopting the report and recommendation of Magistrate Castellanos. The plaintiffs assert that this action was improper due to the law of the case established by the prior decisions. We disagree. Under the circumstances, our decision in *Martínez* provided ample justification for the district court to revisit its prior decisions concerning action under color of state law, and the court did not abuse its discretion by so doing. *See United States v. Lachman*, 48 F.3d 586, 590 (1st Cir.1995) (district court judge has latitude to revisit own earlier rulings); *United States v. Rivera–Martínez*, 931 F.2d 148, 150–51 (1st Cir.1991) (district court has ability to reopen issues when controlling authority makes subsequent contrary decision of law).

7. We use the term "on-shift" rather than the term "on-duty" because, as noted *supra*, Puerto Rico police officers are considered to be on-duty twenty-four hours a day.

violence, making the grant of summary judgment against the plaintiff appropriate. *See id.* at 988.

*Martínez* articulates the standard to be applied in this case to determine whether Hernández was acting under color of state law when he shot and killed Galletti. As we said in that case, "[p]rivate violence—even private violence engaged in by one who happens to work for the state—has different legal ramifications than violence attributable to state action." *Martínez,* 54 F.3d at 985; *see also Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945). "Thus, whether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Martínez,* 54 F.3d at 986. "The key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." *Id.*

One relevant facet of this inquiry is whether the defendant has purported to act under color of state law or, in other words, has acted under "pretense of law." *See Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945); *Martínez,* 54 F.3d at 987. Action occurs under pretense of law when an individual imbued with official authority purports to exercise that authority when actually acting wholly outside of it. *See Martínez,* 54 F.3d at 986–87. However, as we have stated,

> [e]ven though "acting under color of law" includes "acting under pretense of law" for purposes of a state action analysis, there can be no pretense if the challenged conduct is not related in some meaningful way either to the officer's governmental status or to the performance of his duties.

*Id.* at 987. Therefore, it is not enough for an individual merely to purport to exercise official power in order to trigger § 1983 liability, but rather the individual must actually be engaged in the abuse of official power granted by the government. *See West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988); *Martínez,* 54 F.3d at 986.

The pivotal issue to be determined, then, is whether Hernández "was engaged in purely personal pursuits or, conversely, whether he was acting under color of state law." *Id.* at 987. In conducting this inquiry, we must assess Hernández' "conduct in light of the totality of surrounding circumstances." *Id.* In *Martínez,* we identified several factors that are relevant to, but not necessarily determinative of, the issue, including: a police officer's garb; an officer's duty status, including the existence of a regulation providing that officers are on duty twenty-four hours a day; the officer's use of a service revolver; and, the location of the incident. *See id.* at 986, 987.

The plaintiffs have resisted this formulation of the issue. At oral argument, the plaintiffs urged us to find that Hernández acted under color of state law because but for his official authority, he could never have done what he did. We recognize that some language in *Martínez* might appear to support such an expansive position. *See* 54 F.3d at 986 ("In general, section 1983 is not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved in that way but for the authority of his office."). However, that statement merely articulates the minimum threshold that must be met for action to be considered as occurring under color of state law and does not set forth the specific test to be applied in determining whether a challenged act was committed under color of state law. In fact, in *Martínez* we rejected such a sweeping standard for § 1983 liability. *See, e.g., id.* at 987 ("[W]e must assess the nature of his conduct in light of the totality of surrounding circumstances...."), 988 ("'While a police officer's use of a state-issue weapon in the pursuit of private activities will have "furthered" the § 1983 violation in a literal sense,' a court needs 'additional indicia of state authority to conclude that the officer acted under color of state law.'") (citation omitted). We will not jettison our settled case law to embrace such a broad standard of liability here.

The plaintiffs also asserted at oral argument that endorsing the result reached by

the district court would bring us into conflict with the decisions of other circuits. Contrary to this assertion, the approach we articulated in *Martínez* and endorse here is consistent with the approach taken by other circuits that have considered the issue of whether the actions of police officers are taken under color of state law. *See, e.g., David v. City and County of Denver*, 101 F.3d 1344, 1351–54 (10th Cir.1996); *Barna v. City of Perth Amboy*, 42 F.3d 809, 818–19 (3d Cir.1994); *Pitchell v. Callan*, 13 F.3d 545, 547–49 (2d Cir.1994); *United States v. Tarpley*, 945 F.2d 806, 808–09 (5th Cir.1991); *Gibson v. City of Chicago*, 910 F.2d 1510, 1516–19 (7th Cir.1990); *Jones v. Gutschenritter*, 909 F.2d 1208, 1211–12 (8th Cir.1990); *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872–73 (4th Cir.1989). While not explicitly adopting a totality of the circumstances test, these courts have examined the circumstances surrounding a challenged act to determine whether it was committed under color of state law. Given the intensely fact-specific nature of such analysis we find it unremarkable that none of the cases cited by the plaintiffs are so factually similar to this case as to persuade us to adopt the particular outcome the plaintiffs desire.

### 3. Application of the Standard

■ With these preliminary matters aside, we now turn to the substance of this appeal—the review *de novo* of the district court's grant of summary judgment on the color-of-state-law issue. The plaintiffs point to the following factors to justify § 1983 liability: the twenty-four hour a day regulation; Hernández' repeated statements that he was a police officer; his use of his service revolver in the shooting; his statements to patrons that he was there to "keep the peace" and that he was "handling the situation"; and his display of his police identification. These factors, they argue, raise a trialworthy issue as to whether Hernández was acting under color of state law on the night that he killed Galletti.

We agree that some of these factors weigh in favor of a finding of § 1983 liability. In particular, Hernández' comments to patrons that he was there to keep the peace and his

display of his police identification might, viewed in isolation, support an inference that Hernández was acting under pretense of law by purporting to act in his official capacity. However, that conclusion was belied by the rest of Hernández' behavior, especially his repeated assertions that he could do things such as "look dirty" at Galletti because he was a police officer.

Mere statements by individuals that they are entitled to a special privilege because of their official status do not constitute action under color or pretense of state law if the asserted privilege lies clearly outside the scope of their official duties. Statements by Hernández that he could "look dirty" at Galletti because he was a police officer so clearly fell outside his official capacity that they did not constitute a reasonable pretense that he was acting as a police officer at the time.

Even more significantly, the final interchange between Galletti and Hernández prior to their going outside the bar dominates any characterization of the events of that evening. Both parties agree that at a point just before Galletti's death, he invited Hernández outside to settle their differences in a fight. Hernández accepted. From the time that the two left the bar until Hernández shot Galletti, Hernández made no further pretense that he was acting as a police officer.

Whatever brief pretense Hernández may have made to be acting in his official capacity by showing his identification and stating that he was keeping the peace ended when the two agreed to fight it out. In *Martínez*, we stated:

> The campaign of terror that [the harassing officer] mounted was patently personal in nature, and [the victim] unquestionably realized as much; indeed, there was not the slightest indication that [the harassing officer's] conduct was undertaken pursuant to the authority of his office. Plainly, the fact that [the victim] walked away numerous times shows that he was not "so intimidated" by [the harassing officer's] status as a policeman "as to cause him to refrain from exercising his legal right[s]."

*Martínez*, 54 F.3d at 988 n. 6 (quoting *Jones v. Gutschenritter*, 909 F.2d 1208, 1212 (8th Cir.1990)). Here, any possibility that Galletti

was intimidated by Hernández' claims of official status is belied by the undisputed fact that Galletti invited Hernández to engage in a private brawl. Because Hernández made no further pretense of official action, there is not enough evidence in the record, even taken in the light most favorable to the plaintiffs, to support the inference that Hernández was acting under color of state law when he shot Galletti. As the district court concluded,

> Galletti's reaction in the face of Hernández' openly hostile behavior towards him serves to buttress our conclusion that Hernández' actions constituted private conduct outside the line of duty, and that the latter's status as an officer did not enter into his taunting of the decedent. The particular interaction between Hernández and Galletti was of a distinctly personal nature, and Galletti unquestionably realized as much. The fact that Galletti not only initiated the confrontation, but subsequently invited Hernández to "fight it out" outside the bar shows that he was not so intimidated by Hernández' status as a policeman "as to cause him to refrain from exercising his legal rights."

We agree, and this conclusion ends our inquiry.[8]

### Conclusion

For the reasons stated above, we **affirm** the judgment of the district court.

[8]. The action-under-the-color-of-state-law issue being decided in favor of the defendants, the remainder of the plaintiffs' claims unravel. With no underlying § 1983 violation by Hernández, none of the other defendants can be found liable under the supervisory liability theory forwarded by the plaintiffs.