Machos v. City of Manchester          CV-94-627-M    05/09/97
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Ronald Machos and
Ruth Machos,
      Plaintiffs

      v.                                    Civil No. 94-627-M

The City of Manchester,
The Manchester Police Department,
The Manchester Police and Patrolman's
Association, and Edward Kelley,
      Defendants


                         **O R D E R**


      Ronald and Ruth Machos bring this action against the City of

Manchester (the "City"), the Manchester Police Department (the

"MPD"), the Manchester Police and Patrolman's Association (the

"Union"), and the Union's president, Edward Kelley.  The court

previously dismissed plaintiffs' conspiracy claims under 42

U.S.C. § 1985(3) (Count 3 of plaintiffs' amended complaint) for

failure to state a claim upon which relief might be granted.  See

Fed. R. Civ. P. 12(b)(6).  Of plaintiffs' remaining claims,

Counts 1 and 2 of the amended complaint allege deprivations of

constitutionally guaranteed rights of free speech and privacy,

and are brought pursuant to 42 U.S.C. § 1983.  Counts 4 through 7

allege various state law claims, over which plaintiffs ask the

court to exercise supplemental jurisdiction. Pending before the court are defendants' motions for summary judgment.

## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling upon a party's motion for summary judgment, the court must, "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the moving party carries its burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). See also Fed. R. Civ. P. 56(e). This burden is discharged only if the cited disagreement relates to a genuine

2

issue of material fact. <u>Wynne v. Tufts University School of Medicine</u>, 976 F.2d 791, 794 (1st Cir. 1992), <u>cert. denied</u>, 507 U.S. 1030 (1993). "Generally speaking, a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." <u>International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center</u>, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

## Factual Background

Presented in the light most favorable to plaintiffs, the undisputed material facts are as follows. At all times relevant to this proceeding, Mr. Machos was a member of the City of Manchester Board of Aldermen. He was also president of New England Traffic Control Services, Inc., a private company that provided traffic control services at public roadway work sites. On March 27, 1994, a group of Union members, including Kelley, gathered outside the homes of various Manchester political figures to protest proposed municipal legislation that would have effectively nullified an ordinance which provided that only Manchester police officers could lawfully provide traffic control at public roadway work sites. Many Manchester police officers accepted such off-duty work as a means of supplementing their

3

police salaries.  The Union demonstration moved from place to place and eventually reached plaintiffs' home.

Plaintiffs claim that a group of Union members wearing their Manchester police uniforms and carrying service weapons, blocked access to their street and gathered on their front lawn.  After being told by Mrs. Machos that the Alderman was not at home, the group was asked to leave the property.  The Union moved on, but first Kelley reportedly punched his fist into his palm and stated that the Union would "come back and get him."

Plaintiffs say that the Union's activity on and around their property, and the menacing and threatening behavior by certain Union members frightened and intimidated them, and claim that it constituted "state action," which violated their constitutional rights to free speech and privacy.  Accordingly, plaintiffs assert that they are entitled to relief under 42 U.S.C. § 1983. The Union, on the other hand, says that its members were engaged in protected political speech and were lawfully protesting, as a union, proposed changes to the City ordinance then under consideration by the Aldermen which would have substantially affected their economic interests.  They were also drawing attention to Alderman Machos's apparent interest in the traffic

4

control proposal (arising from his ownership of a company that provided competing traffic control services, and thus the likelihood that his company would profit at the officers' expense if the proposed legislation was enacted).

Defendants now move for summary judgment, claiming, among other things, that whatever might have occurred during the demonstration, neither the Union nor Kelley were acting "under color of state law," and therefore, plaintiffs' claims under 42 U.S.C. § 1983 necessarily fail. On March 20, 1997, the court held a combined final pretrial conference and hearing, at which counsel for all parties presented argument on the pending motions for summary judgment.

## Discussion

In light of recent First Circuit precedent and based upon the undisputed material facts of record, plaintiffs' section 1983 claims fail as a matter of law. Neither Kelley nor the Union was acting under color of state law (or under pretense of state law) when the incident giving rise to this litigation occurred. See Parrilla-Burgos v. Hernandez-Rivera, 108 F.3d 445 (1st Cir. 1997); Martinez v. Colon, 54 F.3d 980 (1st Cir.), cert. denied, 116 S.Ct. 515 (1995).

Plaintiffs concede that Kelley and the other members of the Union were not "on shift" when they demonstrated in front of plaintiffs' home. They also agree (as they must) that the demonstration was organized exclusively to advance issues of personal concern to the Union members, as Union members. The demonstration was not conducted to advance any official goals of the City, the MPD, or MPD's management, nor was it sanctioned, directed, or controlled by the MPD.[1]

Nevertheless, plaintiffs contend that the conduct of Kelley and the other Union members constitutes "state action" for the purposes of 42 U.S.C. § 1983 because: some of the demonstrating officers were wearing their police uniforms; some possessed their service firearms; some possessed department-issue two-way radios; and some drove MPD police cruisers. Plaintiffs argue that the City and the MPD are liable under section 1983 because they "participated in" or, at a minimum, facilitated the Union's demonstration by providing the Union members "with the tools to

_____

[1] Plaintiffs do, however, claim that the MPD was "aware" of the Union's intention to demonstrate in front of the homes of certain Manchester political figures. The MPD denies any such advance knowledge of the Union's plan. But even if MPD management had prior knowledge of the Union's plan, such knowledge is, without more, insufficient to convert the Union's otherwise private conduct into state action. Nor is it sufficient to hold the City liable under § 1983.

coordinate their harassment of the Machos's, namely the issuance of wireless radios," Plaintiffs' Objection (document no. 53) at 4, and because the City and the MPD failed to properly train Manchester's police officers or supervise their off-duty conduct. Id. See also Amended Complaint at para. 54.

I.   Section 1983 Claims Against Kelley and the Union.

Whether Kelley and the other members of the Union were acting under color of state law when they protested in front of plaintiffs' home depends on the totality of the circumstances. Martinez, 54 F.3d at 987. As the Court of Appeals for the First Circuit has noted:

> Since the private conduct of police officers does not constitute action attributable to the state and, therefore, does not give rise to section 1983 liability under DeShaney or otherwise, we must determine whether [defendants], at the time and place in question, [were] engaged in purely personal pursuits or, conversely, whether [they were] acting under color of state law.

Id. Here, it is apparent that Kelley and the Union members were engaged in purely personal pursuits when they demonstrated on and around plaintiffs' property.

> 'The key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law.'

7

> One relevant facet of this inquiry is whether the defendant has purported to act under color of state law or, in other words, has acted under 'pretense of state law.' Action occurs under pretense of law when an individual imbued with official authority purports to exercise that authority when actually acting wholly outside of it. However, as we have stated, even though 'acting under color of law' includes 'acting under pretense of law' for the purposes of a state action analysis, <u>there can be no pretense if the challenged conduct is not related in some meaningful way either to the officer's governmental status or to the performance of his duties</u>. Therefore, it is not enough for an individual merely to purport to exercise official power in order to trigger § 1983 liability, but rather <u>the individual must actually be engaged in the abuse of official power granted by the government</u>.

Parrilla-Burgos, 108 F.3d at 449 (citations omitted) (emphasis added). See also Martinez 54 F.3d at 986 ("In general, section 1983 is not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved in that way but for the authority of his office.").

Kelley and the other Union members neither acted under color of state law nor did they abuse official power granted to them by the government. That Union members were dressed in uniform, carried service weapons, and carried two-way police radios, is insufficient, under the facts presented in this case, to transform otherwise private Union activity into state action. See Parrilla-Burgos, 108 F.3d at 449 (factors such as an

8

officer's attire, duty status, and use of a service revolver are relevant to, but not determinative of, this issue); Martinez, 54 F.3d at 986 ("the construct -- 'acting under color of state law' -- rarely depends on any single, easily determinable fact, such as a policeman's garb, duty status, or whereabouts.") (citations omitted). Indeed, plaintiffs were well aware that the demonstration was being carried out by the Patrolmans' Union.

While Kelley and the other members of the Union may have used (or arguably even misused) the "tools" of their profession (e.g., police uniforms, weapons, and radios), they did not use or abuse any authority conferred upon them as state officials. Nor could one reasonably conclude that their conduct was "such that [they] could not have behaved [as they did] but for the authority of [their] office." Martinez, 53 F.3d at 986. Any municipal workers' union could have easily engaged in an identical labor demonstration — that this was a police union provided no greater or lesser ability to appear and demonstrate at the Alderman's home. Had a sanitation department union's members appeared in city trucks and uniforms to demonstrate their opposition to some pending legislation, the same argument could be made — that they were abusing City equipment (trucks and uniforms) by applying them to strictly union business. Again, that conduct might well

9

run afoul of some regulatory provision regarding the proper use of City property, but no one would seriously argue that the sanitation workers were somehow purporting to act in the course of performing their actual or apparent official duties, or that they were acting at the direction of the City, or that they could not have so demonstrated but for the employment status conferred on them by the City.  So, too, the police officers were unarguably demonstrating as police union members — they were not empowered to demonstrate by their official status and were hardly carrying out or even purporting to carry out some official police function.  Accordingly, in light of the facts presented in this case and the precedent in this circuit, the court holds that, under the totality of the undisputed factual circumstances, as a matter of law neither Kelley nor the Union members were acting "under color of state law" during the course of their union demonstration at Alderman Machos's home.

II.  Section 1983 Claims Against the MPD and the City.

While a municipality may be held liable as a "person" under 42 U.S.C. § 1983, Monell v. Department of Social Services, 436 U.S. 658, 690 (1978), such liability may not be founded solely on a theory of respondeat superior.  Id. at 694.  Instead, plaintiffs must show that an official policy or custom caused an

10

MPD employee to violate their constitutional rights.  "The city cannot be held liable under § 1983 unless [plaintiffs] prove[] the existence of an unconstitutional municipal policy."  St. Louis v. Praprotnik, 485 U.S. 112, 128 (1988).  Moreover, plaintiffs must then demonstrate "a direct causal link between [that] municipal policy or custom and the alleged constitutional deprivation."  Canton v. Harris, 489 U.S. 378, 385 (1989).  See also Board of the County Commissioners of Bryan County v. Brown, ___ U.S. ___, 1997 WL 201995 at *5 (April 28, 1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.")

Here, plaintiffs have shown neither an unconstitutional municipal custom or policy, nor a direct link between such a custom or policy and their alleged injuries.  Rather, plaintiffs simply claim that:

11

> [T]he policy that the City alleges has not been identified is in fact located in the Machos' First Amended Complaint, i.e., the MPD Standard Operating Procedures, and was given extensive examination with Lieutenant Tessier at his deposition. Lieutenant Tessier testified that the Manchester Police Department Standard Operating Procedures had several provisions that show the patrolmen are always on duty and that the City controls much of their "off-duty" behavior. This Deposition and the explanation of the Standard Operating Procedures answers affirmatively that there is a material question of fact for the trier of fact to resolve.

Plaintiffs' Objection (document no. 53) at 6. Though plaintiffs' argument is hard to follow, the dispositive answer would seem to be that the mere existence of department regulations which purport to govern police officers' off-duty conduct in some general way does not, without more, expose the MPD or the City to liability for allegedly failing to properly train off-duty officers who are acting as private citizens and entirely outside the scope of their official duties. See generally Canton v. Harris, supra.

Moreover, plaintiffs cannot reasonably argue that the official policy which they have cited (i.e., the MPD Standard Operating Procedures) facilitated or caused an infringement of their constitutional rights because, as plaintiffs themselves point out, those procedures actually prohibit some of the very conduct in which Kelley and the Union members allegedly engaged.

12

The cited policies certainly did not encourage, permit, condone, or cause any of the alleged violation(s) of plaintiffs' rights. Aside from the MPD Standard Operating Procedures, plaintiffs point to no other policy, custom, order, directive, or suggestion emanating from the City or the MPD which even arguably caused the police union to demonstrate, much less violate any of their constitutional rights. It seems evident that the Union decided to demonstrate for rather obvious economic reasons of direct interest to its members and which directly related to the Alderman's political and personal positions. Accordingly, plaintiffs cannot reasonably claim in this case that the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," caused their alleged injuries. Monell, 436 U.S. at 694.

Kelley and the Union members were unquestionably engaged in organized labor relations activity, as private citizens and not as state actors, when they demonstrated on and around plaintiffs' property about a matter of public and political interest that directly related to their own economic interests and the terms and conditions of their employment. Their conduct fell outside the scope of their employment by the MPD and the City; they

13

neither acted in an official capacity nor did they purport to exercise any official authority granted them by state law. Finally, their allegedly wrongful conduct was not the product of any municipal custom or policy. Therefore, plaintiffs' "failure to train" and "failure to supervise" claims fail as a matter of law and the City and the MPD are entitled to summary judgment.

**Conclusion**

For the foregoing reasons, the court concludes that defendants are entitled to summary judgment with regard to Counts 1 and 2 of plaintiffs' amended complaint (alleging causes of action under 42 U.S.C. § 1983). Even assuming that the conduct of Kelley and the other Union members during the demonstration was unlawful, it is clear that neither Kelley nor the Union members were acting under color of state law. So, while it is conceivable that plaintiffs may have some colorable claim(s) against Kelley, the Union, and other Union members, based upon state law, their federal claims are not viable. Simply stated, the conduct of police officers or other state or municipal officials cannot give rise to an actionable constitutional claim under 42 U.S.C. § 1983 if those officials are acting as private citizens, and are not performing or purporting to perform any official function and are not acting in a way that they could

14

only act because of the authority or status conferred upon them by the state or municipality.

Accordingly, the motion for summary judgment submitted by Kelley and the Union (document no. 32) is granted. Likewise, the motion for summary judgment filed by the City of Manchester and the Manchester Police Department (document no. 31) is granted. The remaining pending motions (documents nos. 33, 38, 39, and 60) are denied as moot.

Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise its supplemental jurisdiction over the remaining claims set forth in plaintiffs' amended complaint (Counts 4 through 7), as they are based solely upon state law. Accordingly, those counts are dismissed without prejudice to refiling in state court. The Clerk of the Court is instructed to close the case.

15

**SO ORDERED.**

                                      _____
Steven J. McAuliffe
United States District Judge

May 9, 1997

cc:   Lawrence B. Gormley, Esq.
      Michael E. Avakian, Esq.
      Michael B. O'Shaughnessy, Esq.
      Robert J. Meagher, Esq.
      Kenneth J. Gould, Esq.