José **GUEITS–COLÓN**, Plaintiff,

v.

Ferdinand De **JESÚS**,
et al, Defendants.

No. 00–1766 (HL).

United States District Court,
D. Puerto Rico.

Dec. 12, 2001.

Mauricio Hernandez–Arroyo, Law Offices of Athos Vega, Jr. & Associates, Ponce, PR, for Jose R. Gueits–Colon, plaintiffs.

Luis F. Del–Valle–Emmanuelli, Garcia & Fernandez, San Juan, PR, Eileen Landron–Guardiola, San Juan, PR, Eduardo A. Vera–Ramirez, Landron & Vera, LLP, San Juan, PR, Jose R. Cintron–Rodriguez, San Juan, PR, for Ferdinand De–Jesus.

Laura Belendez–Ferrero, Arlington, VA, Jose R. Cintron–Rodriguez, San Juan, PR, for Luis Fraticeli–Viera.

Laura Belendez–Ferrero, Arlington, VA, for Rentas Leandry, Sgt., Rene Irizarry, Lt.

Johanna M. Emmanuelli–Huertas, Pedro Ortiz Alvarez Law Offices, Ponce, PR, for Cruz De–Jesus.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court are three motions for summary judgment: one by Defendant Ferdinand De Jesús ("Ferdinand"); one by his brother Cruz De Jesús ("Cruz"); and one by Defendants René Irizarry–Rodríguez ("Irizarry"), Jorge Rentas–Leandry ("Rentas"), and Luis Fraticelli–Lleras ("Fraticelli"). All the defendants, save Cruz, are members of the Puerto Rico Police Department. Rentas and Irizarry are the supervisors of Fraticelli and Ferdinand. Plaintiff José Gueits Colón ("Gueits") is a member of Ponce's Municipal Police Department. He brings this claim pursuant to section 1983 [1] and, under the Court's supplemental jurisdiction,[2] pursuant to the Puerto Rico Constitution and Article 1802 of the Puerto Rico Civil Code.[3]

The Court reviews the record in the light most favorable to Gueits and draws all reasonable inferences in his favor. *See LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993). This case revolves around an incident that occurred in the aftermath of a shooting at the Gianna Laura condominium complex in Ponce on June 20, 1999. Ferdinand was a resi-

dent of one of the buildings in the complex. He was off-shift and at home when the shooting took place.[4] He grabbed his service revolver and went down to the lobby to investigate. A wounded man was lying in the vestibule of one of the buildings. Ferdinand went to a neighbor's apartment to call 911, and shortly thereafter other persons took the wounded man to the hospital. Police officers began to arrive at the scene, and Ferdinand explained the situation to them. He then returned to the vestibule to protect the scene.[5] Ferdinand was in civilian dress and did not have any police badge or identification on him.[6]

While Ferdinand was inside the building where the shooting took place, his brother Cruz, who was also a resident of the complex, arrived. The two of them then learned that their sister and brother-in-law had also been wounded in the shooting and had been taken to a hospital. Upon receiving this news, Cruz and Ferdinand ran out of the building.[7] They first got into a patrol car to have it take them to the hospital, but—for reasons not clear from the record—they immediately got out of the car.[8] They then started running for Cruz's car.[9] Ferdinand's service revolver was visible, tucked in the waist of his pants.[10]

Meanwhile, Gueits and his partner had arrived at the scene at approximately 11:30 p.m., after they received a radio call re-

---

1. 42 U.S.C.A. § 1983 (West Supp.2001).

2. 28 U.S.C.A. § 1367 (West 1993).

3. 31 P.R. Laws. Ann. § 5141 (1991).

4. Docket no. 67, exhibit 6; docket no. 76, exhibits 3 & 4; docket no. 79, exhibit 5.

5. Docket no. 79, exhibit 5.

6. Docket no. 67, exhibit 7, answer no. 4; docket no. 74, exhibits 9, 10, & 33.

7. Docket no. 76, exhibits 5–7; docket no. 79, exhibit 5.

8. Docket no. 74, exhibits 22, 30, & 34.

9. Docket no. 79, exhibit 5.

10. Docket no. 74, exhibits 2 & 22; docket no. 92, exhibits 6 & 7.

questing back-up.[11] By that time, a number of officers from the Puerto Rico Police Department and Ponce Municipal force had already arrived and secured the area. Once Gueits and his partner learned that the situation was under control, Gueits moved his squad car so as not to block other police vehicles. He then positioned himself on the outskirts of the scene and began to search for evidence with his flashlight.[12]

As Cruz and Ferdinand were running, they passed Officer Edgar Figueroa, who was stationed just outside the building.[13] Cruz passed Figueroa first and ran in Gueits' direction. Figueroa did not know who Cruz was and he shouted at Gueits to stop him.[14] Gueits tried to block Cruz, who tried to elude the police officer.[15] The two began to struggle.[16] Moments later, Ferdinand arrived at the scene. He told Gueits that he was a police officer, that there had been an emergency, and that he and his brother were on their way to the hospital to see their sister.[17] Ferdinand then began to punch Gueits. Cruz also started to punch him. Fraticelli, an officer of the tactical operations unit, was in uniform and at the scene. He grabbed Gueits from behind and used his nightstick to pin down his arms.[18] Other officers intervened and pulled Ferdinand away. The officers present initially restrained, handcuffed, and disarmed him, although a ranking officer subsequently ordered that Ferdinand be released.[19] After Ferdinand and Gueits had been separated, Fraticelli struck Gueits two more times with his nightstick.[20]

Gueits claims that Cruz, Ferdinand, and Fraticelli violated his rights under the Fourth and Fourteenth Amendments. He further claims that Rentas and Irizarry are subject to supervisory liability. All Defendants have moved for summary judgment, and Gueits has opposed the motions. For the reasons set forth below, the Court denies Fraticelli's motion and grants the motions of Cruz, Ferdinand, Rentas, and Irizarry.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."

11. Docket no. 65, exhibit 3, at 24–27; docket no. 74, exhibit 28.

12. Docket no. 65, exhibit 3, at 26–30; docket no. 74, exhibit 28.

13. Docket no. 76, exhibits 11 & 12.

14. Docket no. 79, exhibits 1, 2, & 7; docket no. 74, exhibit 15.

15. Docket no. 74, exhibit 34; docket no. 76, exhibits 14 & 27; docket no. 92, exhibit 1.

16. Docket no. 65, exhibit 3, at 45–47; docket no. 74, exhibits 26 & 30; docket no. 92, exhibit 1.

17. Docket no. 74, exhibits 30, 31, 33, 34, & 38; docket no. 79, exhibit 5; docket no. 92, exhibit 3. In his deposition, answer to interrogatories, and sworn statement to the Puerto Rico Police Department's investigative division, Gueits stated that Ferdinand did not identify himself as a police officer. *See* Docket no. 65, exhibit 3, at 51–52; docket no. 67, exhibit 7, answer no. 4; docket no. 74, exhibit 28. Nonetheless, because the Court views the record in the light most favorable to Gueits, it will assume that Ferdinand did in fact tell Gueits that he was a police officer, although Gueits may not have heard him.

18. Docket no. 65, exhibit 3, at 47–51, 56; docket no. 67, exhibit 7, answer no. 4; docket no. 74, exhibits 22 & 28; docket no. 92, exhibit 2.

19. Docket no. 65, exhibit 3, at 61, 63, 111; docket no. 74, exhibit 22.

20. Docket no. 65, exhibit 3, at 55–57, 60–61; docket no. 74, exhibit 28.

*See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e); *LeBlanc,* 6 F.3d at 841. The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

### 1. *Cruz's motion for summary judgment*

A claim under section 1983 has two essential elements: (1) the conduct complained of must have been committed under color of state law, and (2) the conduct must have worked a denial of rights that are protected by the Constitution or laws of the United States. *Martinez v. Colon,* 54 F.3d 980, 984 (1st Cir.1995). Cruz, Ferdinand, and Fraticelli each argue that they were not acting under color of state law and therefore they are not liable under section 1983. The Court addresses each of these first three Defendant's motion in turn.

Cruz argues that, as a private citizen, he was not acting under color of state law. Generally, a private party's conduct will not subject him to liability under section 1983. *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 253 (1st Cir.1996). A private party's conduct will be attributable to the state when the state "'has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity.'" *Camilo–Robles v. Hoyos,* 151 F.3d 1, 10 (1st Cir.1998) (quoting *Barrios–Velazquez v. Asociacion De Empleados Del Estado Libre Asociado,* 84 F.3d 487, 494 (1st Cir.1996)).

In the present case, there is no evidence that there was such interdependence between Cruz and the Puerto Rico Government. The extent of his connection with the local government is that he was accompanying his police officer brother as they rushed to the hospital. This is not sufficient to qualify Cruz's actions as conduct performed under color of state law. Gueits argues in his opposition to the motion for summary judgment that Cruz resisted arrest and "undoubtedly influenced" Ferdinand to conspire with him. This argument has three weaknesses. First Gueits' amended complaint makes no mention of a conspiracy claim under 42 U.S.C. § 1985. Only in special circumstances—none of which apply here—will a court treat an opposition to a motion for summary judgment as a de facto amendment to the complaint. *Bonilla v. Trebol Motors Corp.,* 150 F.3d 77, 81 (1st Cir.1998); *cf. Ruiz v. Posadas de San Juan Associates,* 124 F.3d 243, 250 (1st Cir.1997) (A motion to amend complaint after defendant has moved for summary judgment must be supported by substantial and convincing evidence). The Court therefore does not consider this new claim of a conspiracy. Second, even if the Court were to consider the claim, Gueits has adduced no evidence

to demonstrate that such a conspiracy existed. An allegation of conspiracy must be supported by material facts; mere conclusory statements will not suffice. *Slotnick v. Garfinkle,* 632 F.2d 163, 165 (1st Cir. 1980). Third, as discussed in part 2. below, the record indicates that Ferdinand himself was not acting under color of state law. Thus, even if Cruz had conspired with him, this would have been a conspiracy between two private actors. Accordingly, in the absence of any evidence to establish that Cruz was acting under color of state law, the Court grants his motion for summary judgment and dismisses the section 1983 claims against him. The Court dismisses without prejudice the Puerto Rico law claims against him. *See Houlton Citizens' Coalition v. Town of Houlton,* 175 F.3d 178, 192 (1st Cir.1999).

### 2. Ferdinand's motion

Ferdinand also argues that he was not acting under color of state law. Because he is a police officer, the analysis of this issue is significantly more complex than was required for Cruz. In making this analysis, the Court is guided by the recent series of First Circuit cases on this chiaroscuro area of the law. *See Zambrana–Marrero v. Suarez–Cruz,* 172 F.3d 122 (1st Cir.1999); *Barreto–Rivera v. Medina–Vargas,* 168 F.3d 42 (1st Cir.1999); *Parrilla–Burgos v. Hernandez–Rivera,* 108 F.3d 445 (1st Cir.1997); *Martinez v. Colon,* 54 F.3d 980 (1st Cir.1995).

██ The determination of whether a police officer was acting under color of state law requires a court to assess the totality of the circumstances and consider "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Zambrana–Marrero,* 172 F.3d at 125 (quoting *Barreto–Rivera,* 168 F.3d at 46 (quoting *Martinez,* 54 F.3d at 986–87))

(internal quotations omitted). The general inquiry is whether the officer's actions occurred while he was performing an actual or apparent duty or whether the officer could not have behaved the way he did " 'but for the authority of his office.' " *Zambrana–Marrero,* 172 F.3d at 125 (quoting *Martinez,* 54 F.3d at 986). A defendant acts under color of state law when he exercises power that is " 'possessed by virtue of state law' " and made possible because the defendant is clothed in the authority of state law. *Martinez,* 54 F.3d at 986 (quoting *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988)).

██ There are certain discrete factors which a court may consider, such as the officer's garb; his duty status and the existence of a regulation providing that officers are on duty twenty-four hours a day; the use of a squad car and police radio; the use of a service arm or weapon; the use of handcuffs or other traditional law-enforcement tools; whether the officer detained, interrogated, or searched a citizen; and the location of the incident. *See Zambrana–Marrero,* 172 F.3d at 128; *Barreto–Rivera,* 168 F.3d at 45, 48; *Parrilla–Burgos,* 108 F.3d at 449; *Martinez,* 54 F.3d at 985–86. These factors, however, should not be applied in a simplistic or mechanical formula. No single factor will be dispositive in a determination of whether an officer was acting under color of state law. *Zambrana–Marrero,* 172 F.3d at 125; *Barreto–Rivera,* 168 F.3d at 45.

██ One relevant facet of this inquiry is whether the officer acted under "pretense of law." *Parrilla–Burgos,* 108 F.3d at 449. Action is under pretense of law if an officer "imbued with official authority purports to exercise that authority when actually acting wholly outside of it." *Id.* The action must be related in some meaningful way either to the performance

of the officer's duties or to his governmental status. *Zambrana–Marrero*, 172 F.3d at 126; *Martinez*, 54 F.3d at 987. The private conduct of an officer performed "outside the line of duty and unaided by any indicia of actual or ostensible state authority" is not action done under color of state law. *Martinez*, 54 F.3d at 986–87. A pivotal issue is whether the defendant was acting in furtherance of purely personal pursuits. *Parrilla–Burgos*, 108 F.3d at 449. Put another way, if the officer " 'purposes to act in an official capacity or to exercise official responsibilities pursuant to state law,' " he is acting under color of state law. *Barreto–Rivera*, 168 F.3d at 46 (quoting *Martinez*, 54 F.3d at 986).

■ In the present case, Ferdinand was off-shift and out of uniform at the time of the incident. Additionally, he was not carrying a police badge or other indicia that would identify him as a police officer. These factors support a finding that he was not acting under color of state law, although they are not, by themselves, dispositive. This finding is further supported by the fact that once Ferdinand got into the fight with Gueits, other officers restrained him and handcuffed him. The Court finds to be even more significant the evidence which indicates that at the time of his encounter with Gueits, Ferdinand was acting in furtherance of a purely personal pursuit. That is, he and his brother were racing to the hospital to which his sister and brother-in-law had just been taken. The record does not indicate that he was acting as a police officer or that his attack on Gueits was done in furtherance of an arrest, detention, or any other official

duty. Rather, the evidence indicates that he was acting as a concerned, and probably agitated, family member who was trying—albeit in a wholly improper manner—to stop Gueits from detaining his brother.

■ The Court recognizes that there are factors here that could constitute indicia that Ferdinand was acting under color of state law. When viewed in the totality of the circumstances, however, they fail to establish that he was acting in an official capacity. For example, Gueits argues that one of these factors is that Ferdinand had helped to secure the crime scene immediately after the shooting.[21] This certainly appears to have been conduct done under color of state law. However, Ferdinand's actions to secure the scene is not the conduct of which Gueits is complaining. Rather, he brings his claim for Ferdinand's conduct when the two ran into each other a few minutes later. The fact that an officer may have been acting under color of state law at one point in time does not mean that all action taken immediately thereafter will constitute action done under color of state law. The facts of *Parrilla–Burgos* are illustrative of this point. In that case an off-duty officer got into a heated exchange at a bar with Lionel Galleti, another one of the customers. During the exchange inside the bar, the officer at one point showed his police identification to the crowd, identified himself as an officer, and told the other patrons that he was there to establish peace and order. This action calmed tensions for about five minutes. As the officer was leaving the bar, however, hostilities resumed. He and Gal-

---

21. In his opposition, Gueits points out that Ferdinand acknowledged in his answer that he was the first police officer on the scene and that he had secured the area. Gueits argues that, therefore, Ferdinand is estopped from claiming that he was not acting under color of state law. Ferdinand made this statement in his counterclaim, which was integrated with his answer. *See* docket no. 29, at 5–6. However, one of the affirmative defenses that Ferdinand asserted in his answer was that he was not acting under color of state law. *See id.*, at 3, ¶ 7. Thus, the Court denies Gueits' estoppel argument.

leti stepped outside. The two began to fight, and the officer shot and killed Galleti. 108 F.3d at 447.

■ The First Circuit acknowledged that the officer's earlier display of his identification and his comments to the crowd were indicia that he was acting under color of law. The First Circuit went on to conclude, however, that this was just a "brief pretense" by the officer to be acting in an official capacity. By the time the parties had gone outside to settle their dispute, the officer was no longer acting in an official capacity, but instead was participating in a private brawl. *Id.* at 450; *see also Zambrana–Marrero,* 172 F.3d at 126 (discussing the holding of *Parrilla–Burgos* ); *Barreto–Rivera,* 168 F.3d at 46 (same and noting that in the final moments of the officer's actions in *Parrilla–Burgos,* there was no longer a pretense of official action). Thus, the actions by the officer that could be construed as action taken under color of state law did not render all his subsequent actions as being under color of state law as well. In applying the scenario in *Parrilla–Burgos* to the present case, the Court concludes that although Ferdinand may have been acting in an official capacity when he helped secure the crime scene, by the time he took his first swing at Gueits a few minutes later he was engaged in a private dispute. There was no longer a pretense that he was acting in an official capacity. His punching Gueits cannot be said to have been done in furtherance of his duties as a police officer.

Other factors to consider are that Ferdinand was carrying his service revolver and that a Police Department regulation provides that officers are on duty twenty four hours a day. *See Zambrana–Marrero,* 172 F.3d at 124 n. 1 (recognizing the existence of this regulation). Although Ferdinand did have his gun on him, there is no evidence that he ever used or brandished it during his fight with Gueits. Gueits himself testified that although he saw that Ferdinand had something tucked in his waist, he did not know what it was.[22] In *Parrilla–Burgos,* the officer did use the service revolver to shoot his adversary. The Court considered both the use of this weapon and the always-on-duty regulation, but still found that the officer's fighting and shooting was a personal matter. 108 F.3d at 450–51. Similarly, in the present case, although these factors constitute indicia of action taken under color of state law, they are not conclusive. No single factor is dispositive, and these factors should not be applied in a mechanical manner. *Zambrana–Marrero,* 172 F.3d at 125; *Barreto–Rivera,* 168 F.3d at 45. The Court finds to be more significant the evidence that at the time of Ferdinand's scuffle with Gueits, the former was attempting to get to the hospital as quickly as possible to see how his family members were doing. Thus, he was acting pursuant to personal motives, not official responsibilities.

Gueits also cites to the fact that just before Ferdinand entered the fray, he identified himself to Gueits as a police officer. Normally, when a police officer identifies himself as such, this indicates that he is acting under color of state law. *See, e.g., Parrilla–Burgos,* 108 F.3d at 450 (Officer's comments to patrons that he was at the bar to keep the peace and his display of his police identification could support an inference that he was acting under pretense of law). For example, the officer may identify himself in an attempt to stop a fleeing suspect or as a precursor to the interrogation of a witness. Here, however, the record does not indicate that Ferdinand was invoking the powers of his office or that he was using his authority as a

**22.** Docket no. 65, exhibit 3, at 68; docket no. 67, exhibit 9.

police officer to order Gueits to let his brother go. Rather, the evidence indicates that Ferdinand was merely telling Gueits that he was a police officer and that he and his brother were en route to the hospital because of a medical emergency involving their sister.[23] In short, it does not appear that this identification was done pursuant to Ferdinand's performance of official police duties. Instead, the record indicates that he identified himself in furtherance of a purely personal pursuit. Thus, the Court concludes that Ferdinand's identifying himself as a cop is sufficient to establish that he was acting under color of state law. *Cf. id.* ("Mere statements by individuals that they are entitled to special privilege because of their official status do not constitute action under color or pretense of state law if the asserted privilege lies clearly outside the scope of their official duties.").

In conclusion, the Court has considered the totality of the circumstances surrounding the incident at issue. The record indicates that Ferdinand may have acted under color of state law when he first arrived at the scene and helped to secure the area. However, once he learned that his family members had been victims of the shooting, the evidence indicates that he was no longer acting under pretense of law. His subsequent action—including his fight with Gueits—was not related in some meaningful way to the performance of Ferdinand's official duties or his government status. There is no evidence that when he fought with Gueits he purported to exercise official authority. Rather, it appears that he was acting in furtherance of a purely personal pursuit: going to the hospital. There is no genuine issue of material fact on the question of whether Ferdinand was acting under color of state law. Therefore, the Court grants Ferdinand's motion for summary judgment. The Court dismisses the section 1983 claims against him. The Court dismisses without prejudice the Puerto Rico law claims against him. *See Houlton*, 175 F.3d at 192.

### 3. Fraticelli's motion

█ Fraticelli also argues that he was not acting under color of state law. The record indicates that Fraticelli was on-shift and in uniform at the scene of the shooting; that he was one of the officers that intervened to break up the disturbance involving Ferdinand, Cruz, and Gueits; that he used his nightstick to pin down Gueits' arms; and that after Ferdinand was pulled away, he hit Gueits twice with the nightstick. These factors constitute strong indicia to support a finding that he was acting under color of state law. *See Zambrana–Marrero*, 172 F.3d at 128 (Officers' action in helping to break up a fight was consistent with a police officers' responsibilities to defuse violent situations); *Barreto–Rivera*, 168 F.3d at 48 (Among factors supporting a finding that officer was acting under color of state law were that he was on-shift and in uniform and that he used a nightstick to subdue citizen.). Accordingly, based on these factors, the Court finds that there is a genuine issue as to whether Fraticelli was acting under color of state law.

Fraticelli also argues that he is entitled to qualified immunity. Before addressing this argument, the Court first must determine the precise nature of Gueits' constitutional claim. In his amended complaint he invokes the Fourth and Fourteenth Amendments and alleges violations of his rights to be free from the use of excessive

**23.** Docket no. 74, exhibits 30, 31, 33, 34, & 38; docket no. 79, exhibit 5; docket no. 92, exhibit 3.

force, to be free from punishment without due process, and to equal protection.[24] His claim is primarily one that Ferdinand, Cruz, and Fraticelli used excessive force against him. In his motion for summary judgment, Fraticelli argues that Gueits' claim should be treated as one for a Fourth Amendment violation only.[25] In his consolidated opposition to all Defendants' motions for summary judgment, Gueits does not respond to this argument. His opposition speaks only of a Fourth Amendment excessive force claim. Moreover, excessive force claims are analyzed under the "objective reasonableness" standard of the Fourth Amendment. *See Saucier v. Katz,* 533 U.S. 194, ——, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001); *Aponte Matos v. Toledo Davila,* 135 F.3d 182, 191 (1st Cir. 1998). Accordingly, the Court will treat Gueits' constitutional claim as one for a Fourth Amendment excessive force claim only.

■■■ The qualified immunity doctrine protects state officials from civil liability under section 1983 so long as their conduct does not violate a clearly established constitutional right of which a reasonable official would have been cognizant. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). It is clearly established that the use of force violates the Fourth Amendment if it is excessive under objective standards of reasonableness. *Saucier,* 533 U.S. at ——, 121 S.Ct. at 2156. In the present case, there is evidence that Fraticelli twice struck Gueits after Ferdinand had been restrained and taken away by other police officers. Such a use of force would have been unnecessary and would not meet objective standards of reasonableness. Accordingly, the Court denies Fraticelli's claim that he is entitled to qualified immunity. Therefore, the Court denies Fraticelli's motion for summary judgment.

### 4. The supervisors' motion

Gueits claims in his amended complaint that Rentas and Irizarry are liable under the supervisory liability doctrine of section 1983. Specifically, he alleges that these two supervisors failed to provide training and supervision regarding the lawful use of excessive force. Rentas and Irizarry contest this allegation in their motion for summary judgment. They argue that there is no link between their conduct and the actions of Fraticelli and Ferdinand. Neither Rentas nor Irizarry were at the crime scene when the fight between Ferdinand, Cruz, and Gueits broke out.[26] At the time of the events which gave rise to this case, Ferdinand did not have any administrative complaints against him in his police file, and Fraticelli had one for an incident which occurred in February 1997.[27] In his opposition to the motions for summary judgment, Gueits argues that the two supervisors should have been present at the scene of the shooting, that they failed to properly delegate their responsibilities, and that the absence of ranking officers at the scene was an omission which lead to his constitutional violation. He also argues that the supervisors failed to supervise

24. Docket no. 26, at 2, 5.

25. Docket no. 64, at 3.

26. Docket no. 65, exhibits 1 & 2; docket no. 70, exhibit 4. In his opposition to the motions for summary judgment, Gueits claims that the submitted statements of Irizarry and Rentas, (docket no. 65, exhibits 1 and 2) are not admissible. He does not, however, proffer any explanation as to why they are inadmissible. In the absence of any argument to support this assertion of inadmissibility, the Court will, for purposes of the present opinion and order, consider the statements to be admissible.

27. Docket no. 64, exhibits 1 & 2.

Fraticelli who, he claims, had a history of "repeated conduct of violence and excessive force." [28]

Respondeat superior may not be used to make a state supervisor liable under section 1983. *Camilo–Robles v. Zapata*, 175 F.3d 41, 43 (1st Cir.1999); *Barreto–Rivera*, 168 F.3d at 48. A supervisor may be liable if his training, supervising, or hiring constitutes a deliberate indifference to deficiencies in an underling that may eventually contribute to a violation of civil rights. *Camilo–Robles*, 175 F.3d at 44. To establish deliberate indifference, a plaintiff must show (1) a grave risk of harm, (2) the supervisor's actual or constructive knowledge of the risk, and (3) the supervisor's failure to take readily available measures to correct the risk. *Figueroa–Torres v. Toledo–Davila*, 232 F.3d 270, 279 (1st Cir.2000). The presence or absence of notice by the supervisor is a key element in this analysis. *Rogan v. Menino*, 175 F.3d 75, 78 (1st Cir.1999); *Camilo–Robles*, 175 F.3d at 46. Additionally, the plaintiff must establish an affirmative link between the supervisor's conduct and the subordinate's alleged constitutional violation. *Figueroa–Torres*, 232 F.3d at 279. A plaintiff can demonstrate the existence of this causal link " 'if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations.' " *Barreto–Rivera*, 168 F.3d at 48 (quoting *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 582 (1st Cir.1994)).

In the present case, Gueits has failed to adduce evidence that would create a genuine issue of fact in his claims against the supervisors. Although he argues that the supervisors should have been present at the scene of the shooting, he offers no evidence that their presence would have prevented the fight from occurring. Mere speculation will not suffice. *See Euromotion, Inc. v. BMW of North America*, 136 F.3d 866, 869 (1st Cir.1998) (Conclusory allegations and unsupported speculation cannot, by themselves, prevent a court from granting summary judgment).

Gueits also argues that the supervisors failed to supervise Fraticelli, who had a history of violent conduct. The record indicates that prior to the melee which forms the basis of the present case, Fraticelli had only one other complaint against him in his personnel file.[29] This earlier complaint was for an incident which occurred in February 1997, two years before the events of the present case. The complainants in the earlier incident alleged that Fraticelli and other officers participated in an illegal arrest and committed physical and verbal aggression against them. This complaint was closed in September 1999.

Other than this copy of Fraticelli's administrative file, which contains a brief description of the complaint against Fraticelli, there is no other evidence on this matter. The precise details of the complained-of conduct does not appear in the file. It is unclear why the earlier complaint was closed. Moreover, there is nothing connecting Fraticelli's conduct to Rentas and Irizarry. There is no evidence that these two defendants knew or should have known about this earlier administrative complaint. There is no evidence that they were Fraticelli's supervisors at the time of the 1997 incident. Even if they did know and even if they were Fraticelli's supervisors, there is no evidence as to whether Rentas and Irizarry took disciplinary measures against him or whether

---

**28.** Docket no. 92, at 15.

**29.** Docket no. 64, exhibit 2. Fraticelli's file contains a second complaint against him, but it was for an incident that occurred in November 1999, almost five months *after* the one which gives rise to the Gueits' complaint.

they failed to do anything at all. In short, the record is sorely undeveloped on this issue. In the absence of evidence on whether Rentas and Irizarry had or should have had notice and on whether they failed to take corrective measures, there is nothing affirmatively linking them to Fraticelli's conduct. Accordingly, the Court grants their motion for summary judgment and dismisses the section 1983 claims against them. The Court dismisses without prejudice the Puerto Rico law claims against him. *See Houlton*, 175 F.3d at 192.

WHEREFORE, the Court grants Cruz's motion for summary judgment (docket no. 84), grants Ferdinand's motion for summary judgment (docket no. 66), and grants as to Rentas and Irizarry, but denies as to Fraticelli the motion for summary judgment of these last three defendants (docket no. 64). There remains pending Gueits' claim against Fraticelli, as well as Ferdinand's counterclaim against Gueits. Partial judgment shall be entered accordingly.

**IT IS SO ORDERED.**