Alberto **LLANOS–MORALES,**
et. al, Plaintiffs,

v.

**MUNICIPALITY OF CAROLINA,**
et. al, Defendants.

**Civil No. 12–1847(ADC).**

United States District Court,
D. Puerto Rico.

Sept. 6, 2013.

Guillermo J. Ramos–Luina, San Juan, PR, for Plaintiffs.

Jorge Martinez–Luciano, M.L. & R.E. Law Firm, Janitza M. Garcia–Marrero, Joseph G. Feldstein–Del Valle, Wandymar Burgos–Vargas, Department of Justice, San Juan, PR, for Defendants.

### *OPINION AND ORDER*

AIDA M. DELGADO–COLÓN, Chief Judge.

This civil rights action, brought pursuant to 42 U.S.C. § 1983 ("section 1983") and various Commonwealth of Puerto Rico laws, is the latest in a long line of cases in which residents of Puerto Rico allege excessive force by a police officer. Alberto Llanos–Morales ("Alberto"), his sister Jennifer Llanos–Morales ("Jennifer"), and

several of their relatives[1] (collectively, "plaintiffs") allege that Freddie Márquez–Vergara ("Márquez"), Rubén Moyano–Cintrón, ("Moyano"), and José Aponte–Dalmau ("Aponte") (collectively, "supervisory defendants"), their subordinate, police officer Pedro Agosto–Jiménez ("Agosto"), and the Municipality of Carolina ("Municipality") violated plaintiffs' rights under the Fourth, Fifth, and Fourteenth amendments to the United States Constitution when Agosto shot Alberto in the stomach after declaring he was a police officer preventing a suspect from fleeing the scene of an accident. **ECF No. 1** at ¶ 3.3.

Before the Court is the Municipality's motion to dismiss (**ECF No. 10**), the supervisory defendants' motion to dismiss (**ECF No. 11**), the plaintiffs' response to the motions to dismiss (**ECF No. 19**), and Aponte and the Municipality's reply thereto (**ECF No. 22**). Moyano and Márquez's moved to join both motions to dismiss (**ECF No. 17**), and the Court granted their motion (**ECF No. 18**). The issues in dispute are whether the plaintiffs plausibly plead that defendant Agosto acted under the color of state law and whether plaintiffs plausibly plead supervisory liability. For the reasons discussed below, both motions to dismiss (**ECF Nos. 10, 11**) are **DENIED.**

## I. Factual History

The following facts, which are alleged in the complaint (**ECF No. 1**), are taken as true. *See Marrero–Rodríguez v. Municipality of San Juan,* 677 F.3d 497, 500 (1st Cir.2012).

As of October 10, 2012, Agosto was an officer with the Carolina Municipal Police.

**ECF No. 1** at ¶ 2.9. While Agosto was with the Carolina Municipal Police, Márquez was its Commissioner, Moyano was its Captain, and Aponte was the Mayor of Carolina. *Id.* at ¶ 2.5. Collectively, the supervisory defendants were responsible for "overseeing compliance with constitutional standards" and implementing policies to curb the excessive use of force. *Id.* at ¶ 2.6. They were responsible for "training, evaluation, supervision, conduct, and discipline." *Id.* at ¶ 2.6. The supervisory defendants were tasked with addressing complaints filed against their subordinate officers, such as Agosto. *Id.* at ¶ 2.7. In his capacity as mayor, Aponte had final authority to resolve complaints and oversee selection, retention, training, evaluation, and discipline of police officers. *Id.* at ¶ 2.10.

Agosto told the State Insurance Fund that he developed a "nervous condition." *Id.* at ¶ 3.8. Agosto had also been the subject of several complaints for excessive use of force. *Id.* Each of the supervisory defendants knew of Agosto's nervous condition and the previous complaints lodged against him. *Id.* at ¶ 3.9. As a result of Agosto's medical condition and disciplinary record, the supervisory defendants reassigned him from his previous role patrolling the streets to a desk job. *Id.* at ¶ 3.9. The supervisors did not take away his service weapon or otherwise discipline him. *Id.* at ¶ 3.9. Plaintiffs further allege that the supervisory defendants should have known of the need to provide additional training in light of Agosto's behavior, but failed to take necessary precautionary steps. *Id.*

---

1. The other plaintiffs are Johanna Ortíz–Gutierrez, Alberto's common law wife, Zadkielys Llanos–Ortíz, Alberto's daughter, Kiara Vázquez–Ortíz and Jenock Santiago–Ortíz, Alberto's stepchildren, Rosa Carrasquillo and Humberto Llanos, Alberto's grandparents, and Alberto Llanos–Carrasquillo, Alberto's father. **ECF No. 1** at ¶ 2.2–2.4. Alberto does not allege that his relationship with Johanna Ortíz–Gutierrez forms a distinct conjugal partnership.

On October 10, 2011, Alberto was driving along Route 874 in Carolina, Puerto Rico, with Jennifer as a passenger. **ECF No. 1** at ¶ 3.1. Agosto, who was off duty and not in uniform, was also driving his personal vehicle in the area.[2] Around 2:45 pm, near Route 874's intersection with Sánchez Castaño street, Alberto and Agosto were involved in a car accident. *Id.*

Alberto pulled over and got out of his car to inspect the vehicles. *Id.* Agosto also left his car and "started to rant and curse at Alberto." *Id.* Alberto told Agosto he was going to move his car to a side street and proceeded to do so. *Id.* at ¶ 3.2. Agosto got back in his car, drove it past Alberto and Jennifer's vehicle, and cut their car off, blocking its path. *Id.* Agosto then exited his car, walked over to Alberto's car, drew his gun, and aimed it at Jennifer. *Id.*

In response, Alberto left his car, asked Agosto why he drew his weapon, and told him not to point it at them. *Id.* at ¶ 3. Agosto "told Alberto that he was a Carolina Municipal Police Officer and that he was preventing him from fleeing the scene of the accident." *Id.* Alberto explained that he was moving his car to a less congested area and that there was no need for Agosto to take out his weapon and resort to violence. *Id.* Agosto then trained his weapon on Alberto. *Id.* Alberto asked if he was going to shoot him. *Id.* Agosto shot Alberto in the abdomen and fled the scene. *Id.*

Jennifer then drove Alberto in her car to the Carolina Centro de Diagnóstico y Tratamiento, and an ambulance took him first to the University of Puerto Rico Hospital in Carolina and then to the Rio Piedras Medical Center. *Id.* at ¶ 3.4. After undergoing emergency surgery, Alberto fell into coma for two weeks. *Id.* at ¶ 3.5.

Alberto had exploratory surgery, surgical reconstruction of his abdomen, a colostomy, skin grafts, and blood transfusions and spent a total of 43 days in the hospital. *Id.* In June of 2012, Alberto underwent additional surgery to revert the previous colostomy. *Id.* at ¶ 3.6. For six months, Alberto carried a bag that collected his excrement. *Id.* His recovery is currently incomplete, as he suffers from a "partial permanent disability" and scars. *Id.* Plaintiffs estimate Alberto incurred at least $500.00 in medical costs and $1,260.00 a month in lost wages. *Id.* at ¶ 3.7.

## II. Fed.R.Civ.P. 12(b)(6) Motions to Dismiss

To survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 638 (1st Cir.2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). A claim is facially plausible when the plaintiff pleads facts that permit a court to draw the reasonable inference that the defendant is liable for the alleged wrongdoing by "more than a sheer possibility." *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir.2011) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

In evaluating a complaint, a court takes all well-pleaded allegations as true and draws inferences in the plaintiff's favor but discards threadbare recitations of the elements and unsupported legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A court relies on its judicial

---

**2.** Plaintiffs do not allege in the complaint that Agosto was driving his police car. Plaintiffs concede that it was his personal vehicle. **ECF No.** 19 at ¶ 3.5.

experience and common sense in making this context-specific inquiry. *Id.*

## III. Discussion

To bring a section 1983 claim, a plaintiff must plausibly plead that (1) a defendant acting under the color of state law (2) deprived him of a federal right. *Freeman v. Town of Hudson,* 714 F.3d 29, 37 (1st Cir.2013). Here, plaintiffs allege that the defendants deprived them of their Fourth, Fifth, and Fourteenth Amendment rights. **ECF No. 1** at 1.1 Defendants do not dispute that plaintiffs sufficiently allege that their constitutional rights were violated. Rather, they move to dismiss on the grounds that plaintiffs have not plausibly pled that Agosto acted under the color of state law when he aimed his gun at Jennifer and Alberto and shot Alberto. **ECF No. 10** at 4–6; **ECF No. 11** at 1. Additionally, the supervisory defendants argue that plaintiffs have not plausibly pled their liability for Agosto's actions under a theory of supervisory liability. **ECF No. 11** at 4–6. The Court considers the plaintiffs' standing before addressing, in turn, whether the plaintiffs plausibly plead that defendants acted under the color of state law and whether the plaintiffs plausibly plead supervisory liability.

## A. Section 1983 Standing

Although defendants have not contested subject matter jurisdiction, courts establish it *sua sponte. González v. Thaler,* —— U.S. ——, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012); *see also* Fed.R.Civ.P. 12(h)(3); *McCulloch v. Vélez,* 364 F.3d 1, 5 (1st Cir.2004).

Article III confers subject matter jurisdiction on federal courts to hear actual cases or controversies. U.S. Const. art. III, § 2, cl. 1. For a plaintiff to have standing to sue under Article III, and thus meet the case or controversy requirement, he or she must demonstrate (1) a concrete and particularized injury (2) which is fairly traceable to the defendant's actions and (3) likely redressable. *See United Seniors Ass'n, Inc. v. Philip Morris USA,* 500 F.3d 19, 23 (1st Cir.2007).

■■■■ To have standing to sue under section 1983, a plaintiff must be deprived of a federal right. *See, e.g., Vélez–Rivera v. Agosto–Alicea,* 437 F.3d 145, 151–52 (1st Cir.2006). Family members joined as plaintiffs who have not themselves suffered a deprivation of a federal right "cannot recover in an action brought under § 1983 for deprivation of rights secured by the federal constitution for their own damages . . . unless the unconstitutional action was aimed at the familial relationship." *Robles–Vázquez v. Tirado–García,* 110 F.3d 204, 206 n. 4 (1st Cir.1997). Here, the following relatives of Alberto and Jennifer bring suit: Johanna Ortíz Gutiérrez, Zadkielys Llanos–Ortíz, Kiara Vázquez–Ortíz, Jenock Santiago–Ortíz, Rosa Carrasquillo, Humberto Llanos, and Alberto Llanos–Carrasquillo. **ECF No. 1** at ¶ 2.2–2.4. While plaintiffs allege that Alberto and Jennifer's federal rights were deprived, they do not allege that Alberto and Jennifer's relatives were deprived of their federal rights. The complaint does not allege the unconstitutional actions were aimed at Alberto or Jennifer's family relationships. Therefore, the Court does not have original subject matter jurisdiction to hear the civil rights claims by plaintiffs other than Alberto and Jennifer. *See Reyes Vargas v. Rosello González,* 135 F.Supp.2d 305, 308–311 (D.P.R.2001) (dismissing section 1983 claims brought by decedent's family members in their personal capacity where they could not show they suffered a personal injury or interference with their familial relationships).

Accordingly, the section 1983 claims by Johanna Ortíz-Gutiérrez, Zadkielys Lla-

nos-Ortíz, Kiara Vázquez-Ortíz, Jenock Santiago-Ortíz, Rosa Carrasquillo, Humberto Llanos, and Alberto Llanos-Carrasquillo are **DISMISSED WITH PREJUDICE.**

### B. The Color of State Law

 In determining whether a police officer acts under color of state law, courts consider both the nature of the officer's conduct and its relationship to the performance of the officer's duties. *Zambrana–Marrero v. Suárez–Cruz*, 172 F.3d 122, 125–26 (1st Cir.1999) (quoting *Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 46 (1st Cir.1999)). In so doing, courts examine the totality of the circumstances. *Id.* at 125. Bearing heavily on the inquiry is "whether the actor, at the time in question, purposes to act in an official capacity or exercise official responsibilities pursuant to state law." *Barreto–Rivera*, 168 F.3d at 46 (quoting *Martínez v. Colón*, 54 F.3d 980, 986 (1st Cir.1995)) (internal quotation marks omitted); *accord Parrilla–Burgos v. Hernández–Rivera*, 108 F.3d 445, 449 (1st Cir.1997). A police officer's uniform, on-duty status, use of his service weapon, and statements asserting state power are non-exhaustive indicia of state authority. *See, e.g., Zambrana–Marrero*, 172 F.3d at 125–26; *Martínez*, 54 F.3d at 986 (finding no single factor dispositive).

 In the present case, the totality of the facts alleged plausibly pleads that Agosto acted under the color of state law. *See Otero–Rivera v. Figeroa–Sancha*, Civil No. 10–1406, 2011 WL 4625959, at *7 (D.P.R. September 30, 2011) (holding that an initially personal interaction between citizen and officer can become colored by state law when the officer purports to exercise state authority). Although Agosto was not wearing his uniform, was off duty, and drove his personal vehicle, he cut off Alberto on the road, drew his service weapon, and aimed it at Jennifer. **ECF No. 1** at ¶ 3.2 In explaining his conduct, Agosto stated that he was a police officer preventing Alberto from fleeing the scene of an accident before shooting him in the stomach with his gun. *Id.* at ¶ 3.3; *cf. Zambrana–Marrero*, 172 F.3d at 127–28 (denying motion for summary judgment where police officers intervened in a bar fight, stating they were police officers and using handcuffs, because a jury could have found these purported exercises of authority colored by state law); *Gueits–Colón v. De Jesus*, 177 F.Supp.2d 128, 137 (D.P.R. 2001) (distinguishing the facts of the case, which were insufficient to find action under color of state law, from a hypothetical case where an officer identifies himself "in an attempt to stop a fleeing suspect," which would support finding state action).

In *Otero–Rivera*, a police officer, who was not wearing his uniform, was driving his personal vehicle before engaging in an argument with the plaintiffs, a family driving along the same road. The officer repeatedly blocked their path with his car and aimed his service weapon at them. When the parties stepped out of their vehicles, the officer said the plaintiff-driver hit his car and was under the influence of alcohol, and the officer attempted to take away the plaintiff-driver's keys. The officer eventually called for backup, and a group of policemen, not wearing uniforms, used pepper spray on the plaintiffs and tasered the plaintiff-driver while arresting him. After the fracas, the original officer identified himself as such and demanded the plaintiffs' insurance information. The District Court denied the defendants' motions to dismiss, holding that plaintiffs plausibly pled the officer acted under state law. 2011 WL 4625959, at *7. The Court reasoned that although officer "was acting in his personal capacity" at the beginning of the roadway encounter, his attempts to

take the plaintiff-driver's keys and call for backup invoked state authority. *Id.* Moreover, once the officer identified himself as such, he used his position to intimidate plaintiffs into providing their insurance information. *Id.* These actions indicated that the defendant eventually "slid into his role as police officer." *Id.*

Here, as in *Otero–Rivera,* the encounter began as a personal one: Alberto and Agosto assessed the damage to their vehicles and discussed insurance. Then, Agosto cut off plaintiffs' vehicle and aimed his service weapon at them, like the officer in *Otero–Rivera.* Similar to an officer purporting to use state authority to arrest a drunk driver, here Agosto invoked state authority in declaring that he was stopping a suspect from fleeing the scene. Moreover, unlike the officer in *Otero–Rivera* who did not identify his status as a member of the police until *after* the violent confrontation, here Agosto invoked that authority immediately *before* shooting Alberto in the stomach, a stronger inference of state action. Finally, while these facts in *Otero–Rivera* sufficiently alleged action under the color of state law so as to survive summary judgment, here, at the pleading stage, plaintiffs need only plausibly allege state action. Thus, while the interchange began as personal one, like in *Otero–Rivera,* it transformed into an action colored by state law when Agosto invoked his authority as a police officer to stop a suspect from fleeing the scene.

Defendants argue that the dispute was purely personal because Agosto's actions exceeded the scope of his official duties. **ECF No. 10** at 5; **ECF No. 22** at 4. While action under the color of state law does not wholly turn on whether a police officer stays within the bounds of his duties or exceeds them, purported authority that is clearly unrelated to his duties does not support a finding of state action. *See*

*Zambrana–Marrero,* 172 F.3d at 126; *Parrilla–Burgos,* 108 F.3d at 449; *Martínez,* 54 F.3d at 986–87. Here, however, Agosto's asserted privilege—stopping a fleeing suspect—is one within the gambit of his official duties. *See Gueits–Colón,* 177 F.Supp.2d at 137.

Defendants also rely on cases in their reply finding that the presence of a single factor, without the presence of others, is insufficient to constitute state action. *See Parrilla–Burgos,* 108 F.3d at 450 (a police officer's "mere statements" asserting a privilege do not color his actions under state law when the asserted privilege lies "clearly outside" his duties); *Martínez,* 54 F.3d at 988 ("In the absence of any additional indicia of state action … unauthorized use of a government-issue weapon is too attenuated a link to hold together a section 1983 claim."). Here, however, there are multiple factors indicating that Agosto was operating under the color of state law. Agosto both used his service weapon in aiming it at Jennifer and Alberto before shooting Alberto, and he also made a statement asserting a privilege to stop a suspect fleeing the scene of an accident. *Cf. Burgos v. Fontanez–Torres,* 951 F.Supp.2d 242, 253–54, Civil No. 12–1641, 2013 WL 3216063, at *7 (D.P.R. June 27, 2013) (denying a motion to dismiss and finding that a police officer's statements to the plaintiffs that he considered them criminal suspects and subsequent shooting of plaintiffs plausibly alleged state action).

Defendants rely on *Parrilla–Burgos* to argue that Alberto, in asking Agosto if he was going to shoot him, essentially challenged Agosto to do so, ending any air of state action. **ECF No. 22** at 3–4. The present case is distinguishable from *Parrilla–Burgos.* In *Parrilla–Burgos,* an off-duty police officer exchanged words with a bar patron who eventually challenged the officer to fight outside, saying "you leave

the gun, and me and you will have it out, outside." 108 F.3d at 447. After opening blows, the officer shot the patron to death. The Court held that the officer did not act under the color of state law because it was clear that in accepting the challenge to fight, he was acting as a private citizen, making no pretense to police power. 108 F.3d at 450–51. By contrast, plaintiffs' complaint only alleges that Alberto "asked Agosto if he was going to shoot him." **ECF No. 1** at 3.3. Drawing reasonable inferences from the facts alleged in the complaint, Alberto did not issue a challenge to fight, and thus, his statement does not detract from a finding that Agosto acted under color of state law.

Agosto, although off duty and not in uniform, explicitly invoked his authority as a police officer to stop suspects from fleeing before he aimed his service weapon at Jennifer and shot Alberto in the stomach. While discovery may alter the totality of the circumstances toward an opposite finding, all the complaint must do is plausibly allege state action, a threshold that the plaintiffs have cleared. Accordingly, defendants' motion to dismiss (**ECF No. 10**) is **DENIED**.

## C. Supervisory Liability

The supervisory defendants move to dismiss on the grounds that plaintiffs have not plausibly alleged that the supervisory defendants deprived plaintiffs of their constitutional rights. **ECF No. 11** at 4–6. The doctrine of supervisory liability permits finding a supervising officer or government official liable under section 1983 for engaging in a practice or formulating a policy that leads a subordinate to violate another's civil rights. *Camilo–Robles v. Hoyos*, 151 F.3d 1, 6–7 (1st Cir. 1998). A plaintiff cannot establish supervisory liability under *respondeat superior*; rather, the constitutional violation must re-sult from a superior's direct acts or omissions or "from indirect conduct that amounts to condonation or tacit authorization." *Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40, 47 (1st Cir.2012) (quoting *Ocasio–Hernández v. Fortuño-Burset*, 640 F.3d 1, 16 (1st Cir.2011)) (internal quotation marks omitted). A plaintiff must allege that a supervisor's conduct constitutes "supervisory encouragement, condonation or acquiescence, or gross negligence ... amounting to deliberate indifference" to the subordinate's behavior *Id.* (quoting *Welch v. Ciampa*, 542 F.3d 927, 937 (1st Cir.2008)) (internal quotation marks omitted).

Here, plaintiffs allege that the supervisory defendants acted with deliberate indifference, causing their constitutional violations. **ECF No. 1** at ¶ 2.6–2.8, 4.3. Under a theory of deliberate indifference, "plaintiffs must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." *Figueroa–Torres v. Toledo–Dávila*, 232 F.3d 270, 279 (1st Cir.2000) (quoting *Hoyos*, 151 F.3d at 7). A court will find deliberate indifference only "if it would be manifest to any reasonable official that [a subordinate's] conduct was very likely to violate an individual's constitutional rights." *Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1380 (1st Cir.1995) (quoting *Febus–Rodríguez v. Betancourt–Lebrón*, 14 F.3d 87, 92 (1st Cir.1994)).

Additionally, "liability attaches if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation.... Under such a theory, a supervisor may be brought to book even though his actions have not directly abridged some-

one's rights; it is enough that he has created or overlooked a clear risk of future unlawful action by a lower-echelon actor over whom he had some degree of control." *Camilo–Robles v. Zapata,* 175 F.3d 41, 44 (1st Cir.1999) (internal citations omitted).

■ Plaintiffs must also establish causation. *Figueroa–Torres,* 232 F.3d at 279. The causation element requires an "affirmative link" between the supervisor's acts or omissions and the inferior's rights-violating acts "such that the supervisor's conduct led inexorably to the constitutional violation." *Feliciano–Hernández v. Pereira–Castillo,* 663 F.3d 527, 533 (1st Cir. 2011) (quoting *Soto–Torres v. Fraticelli,* 654 F.3d 153, 158 (1st Cir.2011)) (internal quotation marks omitted); *see Hoyos,* 151 F.3d at 7.

■ Taking the facts as true and drawing reasonable inferences in the plaintiffs' favor, the complaint states a plausible claim for relief because it alleges that the supervisory defendants knew of Agosto's mental state and past excessive force complaints and failed to disarm Agosto or adequately train him. *See Marrero–Rodríguez v. Municipality of San Juan,* 677 F.3d 497, 502–503 (1st Cir.2012) (finding complaint plausibly pled supervisory liability for officers with "direct responsibility" for training exercises that ended in the fatal shooting of a subordinate); *Hoyos,* 151 F.3d at 7 (denying supervisor's defense of qualified immunity where he "was put on notice" of subordinate's history of reckless behavior and failed to permanently disarm him).

Plaintiffs plead more facts than those found insufficient in *Soto–Torres v. Fraticelli,* 654 F.3d 153 (1st Cir.2011). In *Soto–Torres,* the plaintiff's complaint alleged that the supervisory defendant "was the officer in charge during the incident and that he participated in or directed the constitutional violations alleged herein, or knew of the violations and failed to act to prevent them." 654 F.3d at 159 (internal quotation marks omitted). The Court held this did not meet the plausibility threshold because these allegations were too conclusory without other supporting facts. 654 F.3d at 159–60.

Unlike the complaint in *Soto–Torres,* which merely stated that supervisory police officers were "in charge" during the constitutional violations and participated in them, the complaint here alleges that the supervisory defendants were responsible for implementing training programs to curb constitutional abuses and the use of excessive force. *See Marrero–Rodríguez,* 677 F.3d at 502 (inferences from the complaint that supervisory police defendants "had direct responsibility for the conduct of training exercises" and failed to "implement policies, protocols, or correct training about use of live firearms" held sufficient to survive a motion to dismiss). More than merely alleging that the supervisory defendants failed to prevent constitutional violations generally, which was a threadbare conclusion in *Soto–Torres,* the complaint here goes further by alleging that the supervisory defendants were put on notice of Agosto's potential for civil rights violations because they knew of the complaints lodged against him for excessive use of force and knew of his mental or emotion condition. *See Otero–Rivera,* 2011 WL 4625959, at *8 (dismissing supervisory liability claims where supervisor was not "put on notice" of behavior that could lead to a constitutional violation). Although the supervisory defendants reassigned Agosto to a desk job, they did not disarm him or take any remedial measures that would help prevent him from violating constitutional rights in the future. *See Barreto–Rivera,* 168 F.3d at 49 (denying supervisory defendants' summary judg-

ment motion because where their subordinate officer had psychological problems and a complaint history but supervisors reduced his disciplinary sanctions). These specific facts alleging knowledge of Agosto's medical and disciplinary problems, coupled with allegations as to the supervisory defendants' oversight of training and discipline, together are sufficient to plausibly aver supervisory liability for Agosto's violation of the plaintiffs' constitutional rights.

Accordingly, plaintiffs have plausibly plead liability as to the supervisory defendants, and the supervisory defendants' motion to dismiss (**ECF No. 11**) is **DENIED.**

## IV. Conclusion

For the above-stated reasons, Johanna Ortíz–Gutierrez, Zadkielys Llanos–Ortíz, Kiara Vázquez–Ortíz, Jenock Santiago–Ortíz, Rosa Carrasquillo, Humberto Llanos, and Alberto Llanos–Carrasquillo lack standing to sue under section 1983, and their section 1983 claims are **DISMISSED WITH PREJUDICE.** The Court finds that plaintiffs have plausibly pled that defendant Agosto acted under the color of state law and that they have plausibly pled supervisory liability as to the supervisory defendants. Accordingly, defendants' motions to dismiss (**ECF Nos. 10, 11**) are **DENIED.**

**SO ORDERED.**